We have five argued cases this morning. The first is number 23-2158, VLSI Technology v. OpenSky Industries. And before we begin the argument, our order on timing for the argument raised this question about the confidentiality markings, most of which seem to be unjustified in the briefs. Have the parties conferred about that? I think it makes it difficult to conduct the oral argument, difficult to write the opinion, and it's hard to see what the justification is for some of this marking. So our VLSI's position is that none of them need to be kept confidential. You have to speak up, Will. Our VLSI's position is that none of the markings in the briefs need to be kept confidential. We reached out to the PTO. I believe their counsel was busy and we did not get a response on that. The other sides have not had an opportunity to speak with the other parties. I know that they have imposed disclosure beyond what is currently in the briefs. Thank you, Your Honors. The USPTO's position on the confidentiality markings is that they should remain, and the reason why is because of the nature of the proceedings. The confidential material represents an ex parte communication that was sent to the office, and the office has a policy interest in not rewarding that or encouraging unsolicited ex parte communication. Well, apart from that one, the whistleblower aspect of it, there are a lot of confidentiality markings that just have no justification in there. What's the basis for that? So the USPTO endeavored to not include confidential material in their briefs for the ease of today's argument. The only confidentiality markings that we have an interest in are the ones for the whistleblower report, so as not to encourage further... So your only position is that that should continue to be confidential? Yes, Your Honor. Good morning, Your Honors. Mark Fleming on behalf of Intel. For the OpenSky appeal, there's nothing redacted in our briefs. We have no position on what goes on in the first case. With respect to the second case, the PQA appeal, our position is the same as the patent offices, which is that this court should continue to keep under seal and to redact in the public briefs the so-called anonymous document. We think that the court can decide the appellate issues related to that. But apart from that, we can treat everything as non-confidential? Other than the anonymous document, Intel has no objection to that. Okay, so if I understand the parties' positions, everything other than the whistleblower allegations can be treated as non-confidential, correct? That's Intel's position, yes, Your Honor. Okay, so I think the parties should file corrected briefs eliminating the confidentiality markings other than the whistleblower. Your Honor, VLSI is, of course, okay with that. OpenSky's counsel is not here today, so I cannot be sure what their position would be on removing the additional redactions on OpenSky. But if the court believes they should be removed, we're happy to do that.  Perhaps you could consult with OpenSky's counsel. He's had some serious issues this week. I apologize for not having done so. It's health issues. All right, Mr. Walker. Thank you, and may it please the Court. Both of these cases should be remanded to the PTO for at least three reasons. First, the sanctions decisions rest on a policy, a June 2022 compelling merits memorandum that the PTO has now repudiated and rescinded. The Supreme Court is clear that that kind of intervening policy change requires remand for the agency to determine, in the first instance, how the change affects decision under review. And, in fact, the PTO's brief tells us the agency would not decide the issues the same way under current policy. Second, the Director lacked statutory authority to join Intel to these IPRs because its petition was not properly filed under Section 315C. And third, the Director's failure to impose meaningful sanctions, despite finding extortion, abusive process, flagrant violations of her orders, and misleading statements, were inconsistent with recent decision making, were arbitrary and capricious. And that's on top of the errors particular to each of the cases. So I'd like to start with the PTO's rescission of the compelling merits memorandum because I think this is the most straightforward resolution of the cases. A central component... I would read what the PTO said about that memorandum is that they relied on the memorandum for the standard defining what compelling merit is, not that they looked at it as a source of authority for doing what they were doing. Well, at a minimum, the sanctions decisions relied on the memorandum and the rescission notice that rescinded that memorandum. Relying on it for what? Because it seems to me that in reading it, they're relying on it for defining what the standard of compelling merit is, not as the authority for sanctions. Well, I think, you know, obviously it dealt with a different context, but I believe the best reading is that the Director understood the memorandum as being relevant to how she should strike the policy balance. You know, she said, citing the memorandum... Well, if you read it the way I just suggested, there's no problem, right? Well, I think she still relied on it and what the rescission notice has... But if she just relied on it for a definition of what compelling merit is, there's no problem. That's the sole reason, that's the sole reliance. There's no problem here, right? If it were just to find a definition, perhaps. But I think she was relying on it as her declared statement of policy of how compelling merits influenced whether a proceeding should go forward. Which is why she ordered a compelling merits termination per the memorandum. And whether it was just taking inspiration from the compelling merits memorandum or trying to apply it more directly, you know, that was relying on a declared policy. She herself had issued and applying it to this new context. And if the policy justification in the original context is no longer good, and the PTO has told us it's no longer good, then the agency also needs to consider whether that policy balance is good in this other context. You know, the policy of the memorandum was compelling merits often require, you know, counsels going forward, setting aside what it actually had to say about abuse of process. And here she said compelling merits compels us to go forward. That is relying on the same policy that existed. That's the policy that's now been rescinded and repudiated. And she clearly relied on the memorandum. And the rescission notice says direct review decisions that rely on the memorandum shall not be binding or persuasive. So I think what we have here is a situation where the policy change does implicate the decision under review. And the PTO has told us that under current policy it would not decide the issues the same way. So I think that's. But arguing that the PTO doesn't have a right to move forward in the absence of compelling arguments if they determine that that's the appropriate course of conduct. So they may be able to justify that result on a remand, but the agency needs to decide, does this new policy, which rejects compelling merits as being dispositive, should it apply to this case? And that is a policy judgment that the agency needs to make that the court can't make. But the policy, the rescission, doesn't say anything about this context. It has to do with the finitive. It does, but the concerns that led to the rescission of the memorandum apply in this context, too. You know, there's a problem where compelling merits was confusing and hard to apply. PTAB, Patent Bar, complained about that. The guidance that was issued after the rescission makes clear that the compelling merits memorandum had given too much weight to the merits and declares on page 3 that it's no longer dispositive. Put aside the memorandum. How is it an abuse of discretion for, as Judge Lynn was asking, how is it an abuse of discretion to consider compelling merit in connection with what sanctions should be? So, I think the problem there is that there was a declared policy that already existed that said compelling merits often requires going forward, but maybe not if there's abuse of process. There's abuse in the IPR process. I'm asking you to put aside your argument about the memorandum. Is there any basis for saying that apart from the memorandum and the rescission of the memorandum that there's any reason that the PTO can't consider compelling merit? It can consider it, certainly, but I think it still needs to provide a reasoned explanation for why that justifies going forward with a proceeding and, you know, having declared that deterrence was an important requirement, how the sanction that was ultimately issued, in fact, creates deterrence. And just look to what is going to happen in the next case. The patent owner has every incentive to give in to the— But isn't this all within the director's discretion and not subject to our review? So, whatever discretion the director has is certainly subject to the reasoned decision-making requirements of the APA, and so if it fails to take into account important considerations or fails to justify it in light of the policies that she herself invoked, those are going to be failures of reasoned decision-making themselves an abusive process under the APA. If the question is about reviewability, if you're asking about reviewability, this is a sanctions decision. We're not challenging an institution decision, and sanctions is governed by a different statutory and regulatory regime from institution. It's not about Section 314, which is what the appeal bar pertains to. It's about Section 366. I think it's a decision that involves termination, correct? That is one of the sanctions that is possible on the table, but that can happen without regard. And isn't the argument or question as to whether the termination relates back to the institution of the proceeding? I'm sorry, I didn't— Is there not argument that the termination of the proceeding relates back to the institution of the proceeding? I don't think it needs to. You know, this is not a situation where one of the prerequisites for institution, like, you know, disclosing all real parties of interest or something like that, just saying that one of the prerequisites for institution wasn't satisfied. This is sanctions. This is misconduct. Misconduct can happen at any time during the proceeding. The statute and regulations that govern it are not limited to institution, and it would be— But considerations here governing sanctions relate to institution. Compelling merit is an issue relating to institution, right? And that's only because the director chose to import that standard from the institution decision into the different context of sanctions for misconduct. And I don't think an agency— For the decision that we're reviewing, right? Yes, but the fundamental point is what is the decision the court is reviewing, and it's a sanctions decision. It isn't an institution decision, and that makes all the difference under 314D. The only thing that makes unreviewable is the institution decision. And, you know, the director can terminate without deinstituting. That is what the PTO does. That is the IBM versus Intellectual Venture case that's cited in our yellow brief at 22 to 23. You can terminate the IPR without also deinstituting it. Here the director recognized the distinction between denying institution or terminating an instituted trial at Appendix 30. And here the misconduct also continued after institution. And I think just the fact that misconduct and sanctions can arise at any part of the proceeding show why these are not statutory and regulatory provisions that only pertain to institution. They are not prerequisites for institution and are, under the default rule, are reviewable by this court. If OpenSky engaged in misconduct in seeking money to abandon the proceeding, why isn't your offer to pay them money equally a problem? Sorry, I didn't catch it. Your contention is that OpenSky seeking financial compensation to abandon the proceeding is an improper abusive process, correct? Yes. So why isn't it equally problematic for your client to offer to pay them to abandon the proceeding? Why isn't that itself improper conduct? Well, the director certainly made no finding. She distinguished ordinary settlement discussions from the kind of extortion that existed here. This is not ordinary settlement discussions. It doesn't really answer my question. Well, the amounts that we offered were something, you know, akin to nuisance value or litigation costs. They were not the, you know, the eight figure, seven figure. More than that in the other case, right? You know, the amounts were very large in the other case. I don't remember what we offered in that case, but the director. It was millions, right?  I'm not sure if we offered millions in that. Mr. Lemke could answer that, but I think more fundamentally, I think the director reasonably recognized that what happened here was by OpenSky and PQA was well beyond just ordinary settlement that may well be permissible in the IPR context, especially when the other party had. What's wrong is the amount that they saw? I think that's an important part of it. There's also the fact that they made misrepresentations. They blatantly violated discovery orders for the director who was trying to investigate. Those are different questions. Those are certainly different questions, but I think the director could look at this and find that the whole, the entirety of it showed that there was misconduct that was sanctionable. I'm into my rebuttal time, but I will just very quickly say Intel was also improperly joined. The director only has authority to join a party that properly files a petition. The Supreme Court has said that properly filing a petition requires timeliness. Their petition was not timely, and there is nothing in the statute that exempts a petition from the one-year deadline that exists in 315B. Intel's actions were to join, not to file a new petition. Yes, yes, but joinder is conditioned on the party seeking joinder properly filing a petition, and so that was a statutory prerequisite to the director being able to join them. But the statute specifically says that it's without regard to the time, and the Supreme Court in the Thrive case said that's the way to interpret the statute, right? So Thrive did not have that question before, and I think everyone has agreed that that was dictum. We don't sit here to tell the Supreme Court what's dictum and what's not dictum. We have cases saying that whatever the Supreme Court says, we do. Well, I think it was not grappling with the significance of properly file, which is a term the Supreme Court had repeatedly interpreted, and it didn't grapple with the language of the second sentence of 315B, which only says that the one-year deadline does not apply to the request for joinder, and it says nothing about exempting the petition itself from the one-year deadline. And I think that's the sort of dictum that had, you know, no bearing on anything that in the Royal Canine case that we cite, the Supreme Court says those kinds of, you know, offhand remarks are not warranted, do not deserve precedential value. Certainly everyone agrees that no court has actually decided this question. We would urge the court to decide it and do it consistently with the text of the statute, which says it must be properly filed, and the only thing that's exempted from the one-year deadline is the request for joinder itself. With respect to properly filed, the director looks at the petition, correct, and applies the criteria that's in the regulation in order to determine whether it's a properly filed petition. In this case, when Intel was considered for joinder, it had already waived all of its invalidity defenses before a district court. Is that right? I believe it went to trial on anticipation, but otherwise, yes. The ones that were asserted in the IPR, it had already abandoned. How can Intel become a party to the case? And I'm asking you, and I'd like the other side to answer this as well. How is it that Intel can have property filed and be joined to an action that is considering prior and infringement claims that have already been settled, or rather, even more so, that Intel has waived? So I think that points up the claim preclusion issue that Mr. Lampkin will address with respect to PQA, because that is an attempt to collaterally attack. I'm asking you with respect to the requirement that the petition be properly – there be a proper – Yeah, so with respect to properly filed, what the statute requires here is that it be timely filed, and the time bar is from when it's served with the complaint, and that's without respect to how that infringement litigation ultimately proceeds. But I do think that respecting the requirements of it being properly filed shows why Congress reasonably put that into place, because otherwise you have a situation where Intel comes in and is able to commandeer someone else's IPR for its own purposes. Why does properly filed refer to timing as opposed to substance? So the Supreme Court has held time and again that the common usage, common understanding of properly filed is complying with filing deadlines. That's the Pace case, the Artuse case, the Allen case. That is the epitome of what a condition for a properly filed petition is, and we know that Congress was aware of the Supreme Court's interpretation of that language, because Senator Kyle said, Supreme Court in Pace, Artuse, and Allen has interpreted properly filed as requiring compliance with time limitations in all cases. And I think that just goes to show the Supreme Court has told us what those words mean. Congress actually understood it. It just reinforces this requirement. Unless there are any other questions. We'll give you two minutes to rebuttal. Mr. Fleming? Would you like me to go first, Your Honor? No, I mean, you're listed here as going first. Very well. Good morning. May it please the Court. Mark Fleming from WilmerHale together with Stephen Horne on behalf of Intel. The arguments that Your Honors have just heard from VLSI are all arguments that Congress has not given this court jurisdiction to review, because they all go to the decision on institution, which is final and non-appealable under 314D. VLSI itself argued in the PQA case, which is the next one to be heard this morning. Just to be clear, you're not saying that we lack authority to review decisions based on sanctions, reviewing sanctioned decisions? That's not your argument. Our argument is that when the sanction that is sought is vacator of institution, then that is not something that is reviewable, because Congress has made the institution decision non-reviewable. If the sanction, for instance – I had a case that if it's a pure sanctions decision, it might be reviewable. A pure sanctions decision. So, for instance, the order to open Sky to pay $400,000 as a sanction. That is reviewable. No question about that. You could have – Even as an institution issue, if it's a pure sanctions, one had to suggest that might be reviewable. You have situations where you might have an entity who is seeking a termination through a final written decision in its favor. That was the case in VoIPAL, right? Apple was saying as a sanction, you should enter judgment in our favor, a final written decision of unpatentability. That would have been reviewable, like any final written decision would be reviewable. The denial of such a sanction would also be reviewable. But what VLSI has sought here, and ultimately what they need to get in order to get what they want, is vacator of institution of the entire proceeding. It's not enough just to terminate open Sky. Because if you terminate open Sky, the IPR is still properly instituted. The PTAB can still go to final written decision. It could do that even without any petitioner. So in order to achieve their goal here, which is to wipe everything out, they need this court to review the decision on institution. And that is something that Congress has not authorized this court to do. And their advocacy – Is there no circumstance under which the patent office could determine, for example, that conduct during the course of the proceeding was so egregious that the entire proceeding should be discontinued? There are certainly – I'm not here to say that the director could never reach that conclusion. And that would not be an institution. Your position is that's not relating to the institution. It's simply a sanction. No, my position would be that if the director takes the position in her discretion or in his discretion to vacate institution of the IPR, then this court has said, in cases like Medtronic v. Robert Bosch, that that is a decision regarding institution that is not reviewable under 3.4.2. I want to distinguish. The director has the authority to make that determination. But this court has not been given jurisdiction under this court's precedence to review that. Even if the conduct in question is entirely post-institution? So this court said – so Medtronic v. Robert Bosch was a case like that. That was a case where after institution, there was consideration of whether new evidence supported the maintenance of the IPR based on real party and interest considerations. And this court said neither the decision to de-institute nor the decision to terminate the IPR was reviewable. I don't understand how your argument is consistent with Atlanta. I mean, I think Atlanta said a termination decision on remand was not appealable because it was a reconsideration of a decision on institution. If it were the result of a pure sanctions decision, it suggests that it would be appealable. I mean, I think if you had a situation where the decision to terminate was distinct from all the considerations that went into the decision on institution, maybe that's what Atlanta was thinking about. But in this situation, VLSI's advocacy throughout to the director was you should vacate the institution of this IPR. It should never have been instituted. That's 1788. Institution decisions premised on abusive petitions should be vacated. It's 1781. The director should repudiate the institution by terminating the IPR and vacating institution and joinder. That's 1790. That's how the director consistently said she was considering the request was as a review of institution. 127, 136, 137, she constantly says she is reviewing the institution decision and indeed the compelling merits analysis, which is what both the board and the director considered, is an institution-related consideration. It's something that the board considers at the beginning in order to determine whether to institute and then in this case, because it happened post-institution, it was simply a reconsideration of that decision. Whether it happens in the context of a sanction or not, it is still an institution decision. Does it matter if the egregious conduct occurred pre-filing or post-filing? I don't think it matters for purposes of this court's jurisdiction because either way, what the director is doing is either is reconsidering whether the institution was proper or not. But ultimately, whether the court agrees with me or not, even if you do get to the merits of this, I think there is no, VLSI has cited no case on the merits where this court or frankly any appellate court has reversed as an abuse of discretion a lower tribunal's determination of the appropriate sanction for conduct that occurred before it as being insufficiently severe. What about the memorandum? Well, the memorandum, as the discussion indicated and as the PTO's brief makes clear, simply set forth the standard for compelling merits and that's what the director cites on page 86 of the appendix. It's the standard of how you determine whether the merits of an IPR petition are compelling or not. That's what came out of the memorandum. The director was fully entitled to adapt that to this unusual situation as the way to balance the various interests at issue. And the director wasn't required to apply that standard at all. The director could simply have used the statutory standard and just determined, you know, reconfirmed that in fact the petition met the statutory standard of reasonable likelihood and then determined to address any improper conduct through a sanctions order separate and apart from letting the IPR go forward. Instead, she adopted compelling merits which favored VLSI. It meant the petition had to surmount a higher standard in order to keep going forward. And the fact that the memorandum, which of course on its face addresses the fintive related situation when you have parallel litigation, the fact that it was subsequently rescinded does not suggest that it was somehow retroactively improper to use that as a substantive standard for evaluating the merits of this petition in reconsidering whether the institution should go forward. If your argument was correct, wouldn't the statute have to use a word like ab initio, terminate, ab initio, or somehow direct the termination back to the very stage of institution? When you terminate, you stop something that's already in process. And that's exactly what this court confronted in Medtronic v. Robert Bosch. And this court held the board's vacator of its institution decisions and termination of the proceedings constitute decisions, plural, whether to institute IPR and are therefore final and non-appealable under 316D. I mean, an agency like a lower court, like this court, always has the authority to reconsider decisions. And a decision whether to terminate and vacate the institution is simply a reconsideration of the prior decision. That's what this court said. And Atlanta was a pure sanctions decision? Yes, it was a termination decision on remand, but this court held that it was non-appealable because it was a reconsideration of a decision to institute. Psywee, same thing. It wasn't a pure sanctions decision. I believe that's right, but it was still non-appealable. The fact that it was a sanctions decision didn't change the fact that it was a decision on reconsideration of the institution. With respect to Joinder, that is similarly outside of this court's jurisdiction. As the Supreme Court said in Thrive, the time limitation of 315B is integral to, indeed, it's a condition on institution. So that is also not reviewable. Now, VLSI is trying to say it's not appealing institution, it's appealing the Joinder decision, but they have ultimately no objection to the fact of Joinder. The only objection they have is that Intel's petition was not filed within the one-year time bar. That's not quite right because they're also arguing that there was claim preclusion. I mean, the only argument they have against the Joinder of Intel's petition is that it was contrary to the time bar, which Thrive— They also argue that there was claim preclusion. Not in this case. Claim preclusion is in the next case. I'm happy to talk about that, if Your Honor wishes. But in this case, in the OpenSky case involving the 759 patent, there is no claim preclusion argument. All right. Unless the court has other questions, we would respectfully submit that the board's decision should be affirmed, and I'll be back to talk about the PQA appeal shortly. Okay. Thank you, Your Honor. Mr. Mehron. Thank you, Your Honors, and may it please the court. I want to pick up where my friend left off, and that was with the discussion of Atlanta Gas. And VLSI relies heavily on the language from Atlanta Gas talking about a pure sanctions decision. And for the reasons my friend said, this does not appear to us to be a pure sanctions decision because the sanction at issue is the vacater of an institution decision, which is what implicates 314. But even taking Atlanta Gas at face value, if you continue on— You have to do, right? Yes. Atlanta Gas decides that the board's termination decision was multifaceted and involved a holistic evaluation of multiple considerations. And so Atlanta Gas, in that case, the court determined that the board's decision was not a pure sanctions decision. And that is the case here as well. In this case here, the director was considering other factors as well other than whether to sanction. She was considering the interests of the office, the interest of the patent system, and the effect on the economy. And she discusses the full policy balance at Appendix 84 to 87. And so even if you were to disagree that this sanctions decision is not a pure sanctions decision because it touches on institution, the director's decision here was a mixed decision like in Atlanta Gas. Another point I wanted to raise was what my friend on the other side was saying about properly filed when it comes to JOINDER. If you look at the full statutory language, what the statute says is properly filed under Section 311. Section 311 does not contain the one-year time bar that Intel was subject to. It contains a time bar based on the age of a patent, that a patent has to be over a certain age to be subject to an IPR proceeding. And that, I believe, is the best understanding of Senator Kyle's statement that a petition must be timely to be properly filed. The exact statutory language is properly filed under Section 311. What about the memorandum? So the 2022 memorandum was guidance that the former director provided to the board on how to evaluate discretionary denial in the context of Fintech. What use did she make of that memorandum in this case? As I think your honors recognized, she used the memorandum. She didn't use the memorandum. What she did was explain a standard that she was going to apply when she was going to apply. She was evaluating what course to take in this case because she was presented with competing interests on both sides. And the way she decided to resolve them was to say, I'm going to look back at the institution phase record. And if the petition showed compelling merits, that is, if the evidence were unrebutted at trial, it would plainly demonstrate that at least one claim is unpatentable. I am going to permit this proceeding to continue to be maintained because of the significant interest in promoting innovation and ensuring that the office is taking a look at patents as needed. But that position of the Patent Office has now changed. So the current patent... As a matter of policy. Yes, as a matter of... Does that mean we need to send this back for the Patent Office to take a different look? I don't think so because, as I said, the former director did not rely on the 2022 guidance memo that's since been rescinded. What the former director did, and she was clear about this, was she was borrowing a standard that she viewed from one context, a definitive context, to also be useful in her decision of whether to permit the proceeding to be maintained. Like Counsel for Intel said, we believe these issues are unreviewable and, in any event, not an abuse of discretion. Unless, Your Honors, if I have any other further questions, we can rest on the briefs. Okay. Thank you, Mr. Walker. Two minutes. I think the best reading is the director was relying on the memorandum. She said, conducting the compelling merits determination per the memorandum, 86 note 19, remanding to determine whether it's a compelling meritorious challenge as consistent with the memorandum, appendix 86. She said that application of the compelling merits standard best serves the competing interests here, appendix 85. I think it is more than clear that she was relying on that and the policy balance. But even if she was only relying on the definition of what is compelling, if that standard proves so unworkable that the PTO ended up rescinding it in the context from which it arose, it would need to consider whether it's unworkable in the context to which she imported that definition here. And that alone is enough to remand, especially given that the rescission notice says any decisions that rely on the memorandum are also disavowed by the agency, and that they say that the current leadership would not reach the same result. The Atlanta gas case, I think that is very different from this case. It makes clear that sanctions decisions are ordinarily reviewable. The reason it was not reviewable there is because there was an action that the PTO took, ending the IPR, that could be independently justified either by the institution authority or by sanction authority. And because institution authority was enough to sustain it, and that's unreviewable, the action was unreviewable. Even if you could review, even if you were to review the sanctions decision, it wouldn't change the result because there was an independent institution-related justification for it. We have the opposite situation. She refused to take an action that could have been justified either under institution authority or under sanctions authority. We are entitled to review her rationale for refusing to terminate under her sanctions authority. We do not need vacature of institution. The IBM versus intellectual ventures case makes clear you can terminate without deinstituting. Sanctions also include judgment in the trial. It's a terminating sanction that doesn't require deinstituting. We ask for termination in addition to vacature of institution. That's Appendix 1790. The procedural posture here cannot dictate review. You know, the attorney's fees, I think, would be unreviewable if the argument were, well, it came up when she was reviewing the institution decision. And the misconduct in both cases also continued post-institution. The extortion attempts in this case, in PQA, she said the discovery violations themselves, which were all after institution, could have warranted termination. That's Appendix 1646 in PQA. Finally, on Joinder, under Section 311, Section 311 says subject to the provisions of this chapter. That includes the one-year time limitation in 315B. So just to be clear, can you briefly state your prayer of relief? What is it that you want? At this point, we think that a remand to the PTO to reconsider the intervening policy change is probably what makes the most sense. The court could also say that it was improper to join Intel, and the PTO should therefore consider how that affects the process going forward. We can't just remand. We'd have to remand with some sort of instructions. What do you believe those instructions should be? I think, at a minimum, it should be what food store employees, what Panhandle Eastern says. There's an intervening policy change, and so the agency now needs to make the judgment call as to whether that policy change should apply to this case and potentially lead to a different outcome. The court should also say it was improper. You did not have authority to join Intel. Now you should consider how that affects how the OpenSky's and PQA's IPRs now proceed. Okay. I think we're out of time. Thank you. Next case, thank all counsel. That case is submitted.